IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **RON VALENTINE, SR.** | § | |
| | § | |
| **V.** | § | **A-16-CV-442-LY** |
| | § | |
| **JEREMY JAGODZINSKI, et al.** | § | |

## ORDER

Before the Court are Defendants' Motion for Sanctions Pursuant to FED. R. CIV. P. 11 Including Order Determining Plaintiff a Vexatious Litigant, and Entry of a Prefiling Order (Dkt. No. 3), Plaintiff's Answer to Motion on Sanctions, Vexation, and Filing Order (Dkt. No. 7), and Plaintiff's Request for a Hearing by Jury (Dkt. No. 31). The District Court referred the above motion to the undersigned Magistrate Judge for a determination pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Rules.

### I. BACKGROUND

The request for sanctions arises out of this consolidation of two cases, both brought *pro se* by Ron Valentine, Sr., against Jeremy Jagodzinski, Christi Greene, and two judges who presided over cases in Texas state court involving Valentine. The undersigned recommended in both cases that Valentine's claims be dismissed as groundless, and Judge Yeakel adopted those recommendations and dismissed all of the claims Valentine brought. The sole remaining issue in the case is whether Valentine should be sanctioned, or deemed a vexatious litigant, with the accompanying limits on filing new suits in this or other courts. Greene and Jagodzinski request sanctions under FED. R. CIV. P. 11 and TEX. CIV. PRAC. & REM. CODE § 11.054. They ask that the court issue both monetary sanctions and declare Valentine a vexatious litigant. They further ask the

Court to issue findings of fact consistent with the Texas statute, so that they might use those findings in state court to seek a similar injunction against more suits by Valentine.

A brief description the history of this dispute is warranted. Valentine lives next door to Greene and Jagodzinski. Their relationship has steadily deteriorated. Things reached a nadir when Valentine, in retaliation for what he viewed as Greene and Jagodzinski's hosting loud gatherings, mounted large speakers in his backyard facing Greene and Jagodzinski's home, and began playing a single Neil Diamond song over and over for hours at a time, at the maximum volume permitted by local sound ordinances. Understandably frustrated, Greene and Jagodzinski filed a complaint with the city of Austin, and the City charged Valentine with criminal nuisance, for which he was convicted. Dkt. No. 3-1; City of Austin, Municipal Court Case No. 75175125 (Apr. 19, 2012), *aff'd Valentine v. State*, No. 07-12-0307-CR, 2013 WL 1800112 (Tex. App.–Amarillo Apr. 25, 2013). Valentine then sued Greene and Jagodzinksi for nuisance and trespass. Dkt. No. 3 at 5; *Valentine v. Jagodzinski, et al.*, No. C-1-CV-12-002634, in Travis County Court at Law No. 2. Greene and Jagodzinski counterclaimed. The trial court granted summary judgment on Valentine's claims, and the counterclaims went to trial. The jury ruled in favor of Greene and Jagodzinski, and awarded them $50,000 in actual damages, and $50,000 in punitive damages. The trial judge also entered a permanent injunction against Valentine, prohibiting him from a number of acts involving the playing of music, the photographing of Greene, Jagodzinski or their guests, and the calling of police to complain about the noises of human voices. Dkt. No. 3-3. Though Valentine appealed the judgment and injunction, his appeal was dismissed when he was adjudicated capable of paying the appellate filing fee, and then failed to do so. Dkt. No. 3 at 6; *Valentine v. Jagodzinski et al.*, 2013 WL 5914608 (Tex. App.–Austin Oct. 22, 2013).

In 2014, Valentine filed suit in this Court, attempting to collaterally attack (on First Amendment grounds) his conviction for criminal nuisance. The suit was dismissed as frivolous. *Valentine v. State of Texas*, 2014 WL 11514538 (W.D. Tex. Apr. 22, 2014). Valentine then filed a suit in state district court in Travis County against Greene, Jagodzinski, and Shepperd for "Christian hate crimes." *Valentine v. Jagodzinski, et al.*, No. D-1-GN-14-2218 in the 200th District Court of Travis County. That case challenged the constitutionality of the injunction, just as in his appeal—only this time, Valentine based his First Amendment claim not on the injunction's alleged interference with his right to free expression, but rather on an alleged infringement of his right to freely exercise religion. That suit remains pending. Valentine then sued Greene and Jagodzinski in the Southern District of Texas, raising essentially the same claims as he raised in this case. *Valentine v. Greene, et al.*, No.4:14-CV-2543 in the United States District Court for the Southern District of Texas. The court in that case ordered Valentine to file a more definite statement, and when he failed to do so, the court dismissed the case for failure to prosecute. Dkt. No. 3-8.

In his Complaint here, Valentine alleged that the permanent injunction entered against him was unconstitutional. Dkt. No. 6 at 1. He argued that the injunction violates his First Amendment right to freely exercise his religion. Dkt. No. 6 at 1. Additionally, he claimed that the injunction's prohibitions on photographing or videotaping Jagodzinski and Greene violate his First Amendment right to freedom of expression. *Id.* at 19. Valentine argued that because the injunction was unconstitutional, he should not be subject to any claim of contempt of court for violating these aspects of the injunction. *See id.* at 21-22.[1] Because such a collateral attack on a state court

---

[1] At the hearing on these issues, counsel for Greene and Jagodzinski informed the Court that Valentine was recently found in contempt of the court for violating the injunction and was sentenced to three days in jail as a result.

judgment is precluded by well-settled law, Valentine's claims were, as noted earlier, dismissed as groundless.

As noted, Jagodzinski and Greene request that the Court make findings of fact that may be relevant to a request that the state courts imposes similar limitations on Valentine's ability to file suits in those courts.  For this purpose, the Court makes the following findings:

1. There was never a reasonable probability that Valentine would prevail in this litigation, as the claims he brought were barred by long-standing precedents;

2. The prior litigation between Valentine and defendants Jagodzinski and Greene has been finally determined against Valentine, as discussed in the "Background" section above;

3. Valentine has repeatedly attempted to relitigate the validity of the courts' final determinations of his prior suits;

4. Valentine filed the two lawsuits here for an improper purpose, *i.e.*, to harass Jagodzinski and Greene, and to needlessly increase the cost of litigation; and

5. Valentine's claims and legal contentions are not warranted by existing law, nor is there a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law that would support those claims.

## II. ANALYSIS

For the reasons set forth in what follows, the Court will deny the request for monetary sanctions, but will issue the requested pre-filing injunction.

**A.     Rule 11 Sanctions**

A party may not file a motion for sanctions under Rule 11 without first serving the motion on the offending party and then giving their opponent 21 days to withdraw the offending pleading. FED. R. CIV. P. 11(c)(2).  This "safe harbor" provision gives the party "an opportunity to withdraw or correct the offending contention."  *Elliott v. Tifton*, 64 F.3d 213, 216 (5th Cir. 1995).  The "plain

language of the rule indicates that this notice and opportunity prior to filing is mandatory." *Id.* Thus, for a court to have the ability to issue sanctions under Rule 11, the requesting party must comply with the safe harbor provision. Greene and Jagodzinski's motion for sanctions is silent on whether they provided Valentine with the required 21 days notice before filing their motion, but it is apparent that they could not have fulfilled this requirement because the motion for sanctions was filed only four days after Valentine filed his Complaint. Accordingly, Greene and Jagodzinski have not complied with Rule 11.

A court may not issue Rule 11 sanctions *sua sponte* to remedy a party's failure to comply with the safe harbor provision. *See Elliott*, 64 F.3d at 216 (noting that because sanctions were imposed on motion of the party, not on the court's own initiative and there was no show cause order, sanctions under Rule 11 could not be upheld). While a court has authority under Rule 11(c)(2) to issue sanctions in certain circumstances, it must first issue a show cause order and give the offending party an opportunity to respond. *Modelist v. Miller*, 445 Fed. Appx. 737, 741-42 (5th Cir. 2011). Though Valentine was given an opportunity to respond to the defendants' motion and the court held a hearing, this does not operate as notice and an opportunity to respond to permit a court to impose Rule 11 sanctions *sua sponte*.

### B. Court's Inherent Authority

On the other hand, all federal courts have the inherent authority to take steps to protect the integrity of the court from vexatious litigants. In *Elliott*, while the Fifth Circuit reversed sanctions imposed pursuant to Rule 11, it did not reverse the sanctions awarded under the court's inherent powers, and remanded that part of the case to the trial court for a determination of whether there had been bad faith in the case. *Elliott*, 64 F.3d at 217. The Supreme Court has stated that "because of

their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Courts have therefore recognized that "the threshold for the use of inherent power sanctions is high," and there must be "bad faith" before the court may use its inherent powers to impose sanctions. *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995); *Elliott*, 64 F.3d at 217.

One of the well-settled appropriate exercises of a court's inherent powers is issuing pre-filing injunctions against vexatious litigants. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (*citing Farguson v. M Bank Houson, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)). Such an injunction requires "[n]otice and a hearing," including at least an "opportunity to oppose the injunction or be heard on the merits." *Id.* at 189; *Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010). Any injunction issued "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson*, 808 F.2d at 360. Before issuing a pre-filing injunction, a "court must weigh all the relevant circumstances," including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390F.3d 812, 818 (4th Cir. 2004).

Valentine was given notice of the possibility of a pre-suit injunction being entered, and had an opportunity to be heard on it. Greene and Jagodzinski's motion for sanctions explicitly requested that the Court make findings about Valentine's abusive litigation history and enter a pre-filing injunction against Valentine. The motion was filed six months before the hearing took place, giving

Valentine ample notice of the request; indeed, he filed a written response on the issue in which he defended the filing of these two cases. Dkt. No. 7. Further, the Court held a hearing, at which Valentine had a full opportunity to respond to the injunction request, and at which he again argued why his actions were warranted (despite the fact that all of his claims had been determined to be frivolous). Because Valentine had notice and an opportunity to be fully heard on the issue, there are no due process bars to the Court issuing a pre-filing injunction under its inherent powers. *Cf. Hadden v. Letzgus*, 121 F.3d 708, 708 (6th Cir. 1997) (noting that even though the party did not comply with the safe harbor provision, the other party "had ample opportunity to dismiss th[e] meritless case voluntarily" and chose not to do so).

    Further, the relevant factors weigh in favor of issuing an injunction. *See Baum*, 513 F.3d at 189. As detailed in the background section, Valentine has filed two suits in state court, appeals from those decisions, and four suits in federal court. All of these suits, in one way or another, attempt to attack the two final adverse judgments entered against Valentine—the criminal conviction for nuisance, and the civil judgment imposing damages and an injunction. This history of litigation clearly weighs in favor of enjoining Valentine from filing more such suits in federal court. Similarly, the history shows an intent to harass, rather than a good faith pursuit of litigation. Time and again, Valentine's suits have been dismissed and courts have found his arguments meritless, yet he has continued to file more suits, using baseless arguments to rationalize his actions. For example, after he was punished for playing a Neil Diamond song on endless repeat, he began to play religious music, and claims now that he is doing so as part of the exercise of his religion, an issue he raises

in several of his more recent suits.[2] These suits have imposed an immense burden on Greene and Jagodzinski, not to mention the amount of wasted time they have caused the various courts in which Valentine has filed his suits. As in *Baum*, the relevant circumstances weigh heavily in favor of the Court imposing some sort of sanction.

In discussing a pro se prisoner who had filed numerous frivolous federal suits, the Fifth Circuit once remarked, "like any other pastime, recreational litigation has its price." *Gelabert v. Lynaugh*, 894 F.2d 746, 748 (5th Cir. 1990). In that case, the court determined that it was appropriate to impose sanctions "for the very purpose of causing the . . . litigant, with time on his hands and a disposition to retaliate against the system, to think twice before cluttering our dockets with frivolous or philosophical litigation." *Id.* As noted, federal courts have the inherent power to impose sanctions against abusive and serial filers of frivolous litigation. The general rule is that in punishing misbehavior, a court should impose no more than the minimal sanctions necessary to correct the offending conduct. *In re First City Bancocorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002). Here, imposing monetary sanctions or fines would be pointless. Greene and Jagodzinski stated in court that they have yet to collect a single dollar of the $100,000 judgment they hold against Valentine, despite it being more than three years old. Valentine has even been held in contempt of court for violating the state court injunction and spent three days in jail, yet he continues to challenge the injunction. Thus, the threat of contempt is apparently insufficient to change Valentine's behavior.

---

[2]Valentine has failed to explain what religion calls for its adherents to harass their neighbors with music, religious or otherwise.

The Court must therefore take other measures. The right to file suits in the federal courts is not an absolute right; Valentine's abuse of that right merits some consequences, and some limitations on his ability to take advantage of his right. This Court alone has spent dozens of hours dealing with just the two cases consolidated here, to the exclusion of matters that are supposed to be the focus of the courts' work. Imposing a limit on suits Valentine may file in Texas federal courts without first obtaining permission from the court is warranted, as it imposes minimal burdens on Valentine but accomplishes the goal of stemming the tide of his frivolous lawsuits.

### III. ORDERS

For the reasons set forth above, the Defendants' Motion for Sanctions (Dkt. No. 3) and Plaintiff's Request for a Hearing by Jury (Dkt. No. 31) are **DENIED.**

**FURTHER,** it is **ORDERED**, based on the Court's inherent authority, that Ron Valentine Sr. is hereby enjoined from filing in any Texas federal court any lawsuit against Jeremy Jagodzinski or Christi Greene that directly or indirectly contests the validity of the Final Judgment and Permanent Injunction entered by Travis County Court at Law No. 2 in Case No. C-1-CV-12-002634, dated February 27, 2013, or the conviction in Case No. 7575125 in the Municipal Court for the City of Austin, dated October 11, 2011, unless he first obtains permission to file such a suit from a judge of that court. **FINALLY,** it is **ORDERED** that this case be closed.

SIGNED this 9th day of November, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE